GEORGE H. WESSEL v. MRS. C. H. BROWN et al.

CHANCERY PLEADINGS AND PRACTICE. *Sale of equitable interest. Mortgage.* A judgment creditor may file a bill and have the equitable interest of a debtor, in land which has been mortgaged, sold without making the mortgagee a party or ascertaining the amount of his debt; but the better practice, however, is to bring all the parties interested before the court and have their interest ascertained.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

DODD & LANIER for complainant.

JOHN H. SAVAGE and J. P. HELMS for defendants.

COOKE, Sp. J., delivered the opinion of the court.

The original bill sought to subject an alleged equity of redemption of respondents, N. P. and J. E. Saunders, in a tract of land containing 205½ acres, alleged to have been sold at execution sale, and purchased by respondent, George F. Akers, to the satisfaction of a judgment recovered by complainant against Mrs. C. H. Brown, N. P. and J. E. Saunders, for about $4,600, and upon which execution has been issued and returned *nulla bona.*

The amended and supplemental bill alleged that since filing the original bill complainant learned that said respondents had redeemed the land from respondent Akers, but had ascertained that the same was encumbered by a deed of trust executed by respondents, Mrs. C. H. Brown and N. P. and J. E. Saunders, to West H. Humphreys, before the recovery of complainant's judgment, to secure about $2,762 due from said respondents to one B. N. Johnson; that said land was also encumbered by a mortgage executed to J. P. Helm, by said respondents to secure him as their surety upon an appeal bond in an appeal taken by them to the Supreme Court, from a decree of the chancery court rendered against them in favor of one Granberry for about $2,800, which cause was still pending in the Supreme Court, and sought to subject the equitable interests of said N. P. and J. E. Saunders and of Mrs. Brown, if she had any in said land, subject to said prior encumbrances, to the satisfaction of complainant's said judgment, etc.

Wessel v. Brown.

There was a demurrer to the original bill which was properly overruled.

The answers both to the original and supplemental and amended bills of the respondents, Mrs. Brown and J. E. and N. P. Saunders, admitted the recovery of complainant's judgment and return of *nulla bona*, and the sale of said land under execution and purchase by said Akers, but denied that said Akers had been paid his demand for which said land was sold *since the original bill in this cause was filed*, and admit the execution of said deed of trust to West H. Humphreys for the benefit of Johnson, a copy of which is made an exhibit to the amended bill and filed in this cause, and also the mortgage for the benefit of Helm as alleged.

Said West H. Humphreys was made a party respondent to the amended and supplemental bill, but during the progress of the cause in the chancery court, on the 4th of January, 1879, the cause was dismissed as to him upon the rule docket and also as to said Akers, an admission having been entered upon the record that the amount of his bid upon the land had been fully paid off *before the amended bill was filed*.

The chancellor decreed a sale of the interest, either legal or equitable, which said respondents, Mrs Brown and N. P. and J. E. Saunders had in said land, for the satisfaction of complainant's judgment, interest and costs, subject to said mortgage and deed of trust, and the respondents have appealed.

It is now insisted, with apparent earnestness, that was error of the chancellor to decree a sale of the

interest of the respondents in said land, subject to said prior encumbrances, without having all the parties before the court and their respective interests ascertained, as such a sale, it is *now* urged, might cause a sacrifice of the property, as the purchaser at such a sale would take an uncertain and unascertained interest.

No such question was made in the court below either by demurrer or answer to the amended bill.

The power of a chancery court to subject an equity in lands to the satisfaction of a debt, subject to prior encumbrances, has been too long and too well settled now to admit of doubt. A mortgage or deed of trust is but a security for a debt. In equity, the mortgagor or conveyor is held the owner of a beneficial interest in the land, and this right he may sell or convey as any other property. It is not subject to sale by execution under our law—being a purely equitable interest, and therefore is to be reached in a court of equity, either under its inherent powers or under Code, sec. 4283, *et seq.*, authorizing a judgment creditor to subject property not subject to execution: *Weakley* v. *Cockrell*, 2 Tenn. Ch., 320, 321.

We have been referred to no case—we know of none—and think it safe to assume that none can be found, where it has been held that a judgment creditor, with a return of *nulla bona* (which is not now necessary under the provisions of our Code), who comes into a court of chancery seeking to subject the equitable interest of a mortgagor on land to the satisfaction of his judgment, subject to the mortgage, has been denied that mode of relief.

Wessel v. Brown.

It has been often said, and by this court, that the better practice is to bring all the parties in interest before the court and have their respective rights and equities ascertained, and the entire fee simple of the land sold and the proceeds applied to the satisfaction of the respective demands of the parties, as they are entitled to the same, as this mode prevents multiplicity of law suits, as well as prevents the danger of sacrifice of the property. But it is clear, beyond question, that the creditor has a right to adopt either mode he sees proper. And it would be a contradiction in terms as well as an anomaly in equity jurisdiction to say that a party has a choice of remedies, but unless he chooses that one which is deemed preferable by the court, he shall be denied the one which he has chosen.

It is within the power of the mortgagor to show what prior encumbrances upon the property are, but which the respondents in this case have not attempted to do, however, and if by failing so to do, their interests are endangered, we have no power, in such a case as the one now under consideration, to prevent it.

There is no error in the decree of the chancellor, and it must be affirmed with costs.

Jones, Sp. J., delivered the following dissenting opinion:

On the 18th of August, 1876, complainant filed his
44—vol. 10.

original bill against Narcissa P. Saunders, Mrs. C. H. Brown, J. E. Saunders and George F. Akers.

The bill alleges that complainant recovered a judgment in the Law Court of Davidson county, against Narcissa P. Saunders and Mrs. A. V. Brown, from which judgment they appealed to the Supreme Court, and J. E. Saunders became their surety on the appeal bond. At the January term, 1876, of the Supreme Court, and on the 5th of April, 1876, the judgment was affirmed in the Supreme Court and judgment rendered against Miss Saunders and Mrs. Brown for the sum of $4,152.60, the amount of the judgment in the Law Court, and the further sum of $484.07, the interest accrued thereon to April 5th, 1876, making together the sum of $4,637.07, and the costs of the Supreme and Law Courts, as well as against J. E. Saunders, the security on the appeal bond.

The bill alleges that an execution issued on said judgment from the Supreme Court on May 20, 1876, against said parties to the sheriff of Davidson county, and was returned on the 3d of July, 1876, "no property to be found of either of the defendants." A certified copy of said judgment in the Supreme Court is filed and made a part of the bill, and that a certified copy of the execution and return thereon will be filed on or before the hearing if required; that within a day after the rendition of the judgment in the Supreme Court, a duly certified copy of the same was filed for registration, and was registered in Davidson county, in which county the defendants at the time resided, on the 7th of April, 1876.

The bill charges that defendants have no property subject to execution, so far as complainant can learn—that George F. Akers has purchased at execution sale certain lands belonging to defendants, Narcissa and J. E. Saunders, and the same has not been redeemed, the time not having yet expired for redemption, or rather the time for redemption has been extended beyond the two years allowed by law; the said Akers having received payments since the two years expired on the amount of his bid and gave additional time for redemption. The bill calls upon defendant Akers to state the terms and conditions of that contract as well as his co-defendants. Complainant charges that payments have been made to Akers by defendants, but he is ignorant as to the amount. That defendant Akers filed his bill attaching the equity of redemption of his co-defendants in said lands and obtained a decree for the sale of the same, but never enforced said decree. The bill charges that the lands in which Miss Saunders and J. E. Saunders own an equity of redemption, consists of a tract of land upon which they and Mrs. A. V. Brown reside, in Davidson county, containing 205½ acres, and then sets forth the boundaries of said land, and charges that Narcissa P. and J. E. Saunders each own an undivided half interest in said land subject to Akers' purchase. That Miss Saunders owns an equitable interest in some real estate in Edgefield, but complainant supposes the encumbrances thereon in favor of Akers is sufficient to absorb it. Complainant asks the aid of the court to reach and subject to the satisfaction of his judgment and interest

thereon, "the equity of redemption of said J. E. and Narcissa P. Saunders in the realty aforesaid sold under said *venditioni exponas* in favor of said Akers, subject to the rights of said Akers. He does not know whether Mrs. Brown has any interest in said realty, and if so, let her interest in same be subjected also."

The bill prays that writs of attachment and injunction may issue, "and the estate of Mrs. Brown and Miss Saunders and J. E. Saunders be attached—that the equity of redemption of Miss Narcissa and J. E. Saunders, and the interest, if any, of Mrs. A. V. Brown, in and to the land aforesaid be attached, and they be enjoined from disposing of the same. The bill alleges that complainant is informed and believes, that defendants, Miss Saunders and Mrs. Brown, have made a conveyance of their personal property with the view of delaying their creditors. The bill prays that the equity of redemption of the parties and the interest of Mrs. Brown be sold for the payment of his judgment.

A copy of the judgment in the Supreme Court was filed with the bill, with the certificate of the register, showing the same was registered at the time alleged, in the bill.

A demurrer was filed to the bill by Mrs. Brown and Miss Narcissa and J. E. Saunders, which was overruled by the chancellor, except the cause assigned to that part of the bill which seeks discovery as to personal property, which is well taken, and the same is sustained, and that part of the bill dismissed.

J. E. Saunders, Narcissa P. Saunders and Mrs.

Brown file their answers, in which they admit that complaint recovered the judgment stated in the bill, "they suppose it is true that the *fi. fa.* issued from said judgment at the time stated, and that the officer made the return thereon in the manner and at the date as stated in the bill, but do not admit that complainant had a copy of the judgment registered as stated; admit they reside in Davidson county; admit that Akers purchased the land at execution sale as stated, and the time has now expired for redemption, but deny that the time for redemption has been extended beyond two years; admit that Akers has filed his bill attaching their equity of redemption, but has never sold the same, "but his failure to do so was no fault of his but that of the law." They deny that respondents, N. P. and J. E. Saunders, are, or were at the time complainant filed his bill, the owners of the equity of redemption in the 205½ acres of land as described in the bill by virtue of the execution sale thereof by Akers, nor do they own an undivided half interest therein subject to said Akers' purchase." They admit it may be true that N. P. Saunders owns an equitable interest in the Edgefield property, which they are willing that complainant may take by paying the encumbrance on the same and paying a reasonable price in part payment of his judgment. Miss Saunders and Mrs. Brown deny that they have made any conveyance of their personal property to delay reditors.

On the 28th of June, 1878, complainant obtained leave to file an amended and supplemental bill, which

was filed against Mrs. Brown, Miss Saunders, J. E. Saunders and West H. Humphreys.

. This amended and supplemental bill charges that George F. Akers, who had purchased the land in the original bill mentioned at execution sale, has since the filing of the original bill been paid in full of his demand, and all claim upon the 55 acre tract has been relinquished by him, or at least he has been paid in full of his claim against said land. The Edgefield property described in the bill was not redeemed by defendants from him, and the time for redemption having expired the same is now the property of said Akers.

Complainants again charge that the defendants own no property subject to execution, and that since filing his original bill the complainant has ascertained the fact that there was in existence at the time he obtained his judgment referred to in the original bill, a deed of trust; said deed of trust was executed by the defendants, Mrs. A. V. Brown, N. P. and J. E. Saunders, to West H. Humphreys, trustee, to secure a debt to B. R. Johnson in the sum of $2,762.50, being four notes, one for $610, payable in five months at 10 per cent, three others for $217.80 at 6 per cent, due and payable respectively in six, twelve and eighteen months. Said notes are dated June 14, 1874. The deed has been duly registered in the register's office of Davidson county, a duly certified copy will be filed upon the hearing, and when filed is asked to be made a part of the bill; that said deed expressly contracts that all homestead or exemption claim is specially waived; that complainant does not know how much money

was loaned under said conveyance, or what was the actual consideration, nor whether any or all of the same has been paid, and call upon each of the defendants specially to answer on that point.

Complainant has also learned that there is another encumbrance on said property—that suit was instituted in the chancery court of Davidson county in the case of James H. Granbury v. J. E. Saunders and others, and J. P. Helms became their surety on the appeal bond in said cause and took a mortgage on said realty to secure him, which was registered in August, 1878. The defendants, Saunders and others, appealed from the decree ordering a sale of said land and are now litigating the same. The amount for which the decree was obtained was about $2,800, and no part of that has been satisfied. Complainant does not admit that the Granbury decree has priority over him, though it may have. Helms' conveyance is subsequent to his judgment at law. Complainant does not know whether there is any other encumbrance on said land, and calls upon defendants to answer whether there is any other encumbrance. Complainant charges that his judgment interest and costs thereon are still due and unpaid. Complainant prays that said realty described in the original bill, the Melrose tract of 55 acres, and described accurately in the deed of trust of defendants, or rather all of the legal or equitable estate of said defendants therein, owned by them or either of them at date of the Law Court judgment, on the 3d day of February, 1875, be sold on terms of not less than six nor more than twenty-four months time, and free

from the equity of redemption or right of repurchase. He asks that the estate of Mrs. A. V. Brown and N. P. Saunders, if Mrs. A. V. Rrown have any, be first subjected as they are principals, and then that of J. E. Saunders, unless defendants prefer to have their joint interest sold at the same time. Said sale is asked subject to the rights of said mortgagees, and subject to any prior claim acquired by reason of the decree in said cause now pending in the Supreme Court. The bill charges that said land, encumbered as it is, if sold at public sale will not pay complainant's debt, and he asks the appointment of a receiver pending litigation.

On the 26th of October, 1878, J. E. and N. P. Saunders and Mrs. Brown file their answers. The answer denies that George F. Akers has been paid in full of his demand in which said land was sold since the filing of the original bill; admits the Edgefield property has never been redeemed, and it may be true Akers claims it. As to what 55 acre tract of land complainant refers to in his bill, respondents cannot undertake to state, but say they own no such tract of land. They admit the execution of the deed of trust to West H. Humphreys for the purpose stated in the bill, and the debt therein secured was a just debt, being in part for borrowed money. Admits there is another encumbrance in favor of Granbury in reference to which a suit is now pending in the Supreme Court by appeal, and J. P. Helms is the surety upon the appeal bond, and to secure him as such surety a mortgage was executed to him as alleged, but do not

admit that said conveyance to secure Helm is subse-
quent to any lien of complainant. Respondents do not
admit that complainant, by filing his original and
amendended bill, acquired any lien upon said tract of
land. No execution appears to have been filed on the
hearing of the cause, and none has been copied into
the record, nor does it appear that the extraordinary
process of attachment and injunction prayed for were
issued, and no such process is copied into the record.

No answer is filed by Akers or Humphreys. The
following entry is copied into the record: "Endorsed
on back of bill, dismissed as to George F. Akers and
W. H. Humphreys, trustee." There is no date to
this endorsement, and there is no decree of the chan-
cery court dismissing the bill as to these parties. No
proof is taken in the case, nor any exhibits filed as
proof except the certified copy of the Supreme Court
judgment, and the deed of trust to West H. Hum-
phreys, which only conveys 55 acres to secure the debt
to B. R. Johnson. The oath to the answers is not
waived and they are all sworn to.

On the 5th of June. 1875, the cause was heard
by the chancellor upon the original and amended and
supplemental bill, and answers thereto and exhibits
filed.

The decree, after reciting the Supreme Court judg-
ment, the issuance of the execution thereon and return
of *nulla bona* upon said execution, and setting out
the boundaries of the land says: "The said Narcissa
P. and J. E. Saunders each own an undivided half
interest in said real estate, their respective interests

being an equitable interest; said tract is known as. Melrose and contained 205½ acres of land." That there is a deed of trust upon said land, or a part thereof, registered in June, 1874, but there is no proof as to what remains due upon the debt secured, and that. there were other encumbrances and taxes unpaid. The chancellor then gives a decree against Mrs. A. V. Brown and Miss N. P. Saunders and their surety, J. E. Saunders, for the Supreme Court judgment and interest thereon to the 5th of June, 1879, making the sum of $6,105.50 and costs, and defendants are given thirty days in which to pay off this decree. And in default of defendants making payment, the clerk and master is ordered and directed, after advertising as the law directs in case of execution sales at law, to expose to public sale at the court-house in Nashville, Tennessee, all the right, title and and interest, *legal* and *equitable*, of the defendants in and to the said Melrose tract of 205½ acres to the highest bidder, on a credit of six, twelve, eighteen and twenty-four months, taking notes bearing interest from day of sale with personal security, and retaining a lien on their interest in said land for the payment of the purchase money, he will sell their respective interests separately—first selling the interest of N. P. Saunders, and if that be insufficient then to sell the interest of J. E. Saunders. The sale to be free from the equity of redemption or right of repurchase. Defendants have appealed from the decree to this court.

Complainant, it appears, has abandoned the relief sought in the original bill; that is, an attachment and

Wessel *v.* Brown.

sale of the equity of redemption of defendants in the land purchased by Akers at auction sale. In fact, an agreement is copied into the record, signed by the counsel for the parties, in which it was admitted that defendants had, prior to the filing of the original bill,. paid off Akers' claim upon the land. So that defendants had no equity of redemption, if it was the subject of attachment.

The complainant has framed his original bill and amended bill upon the following sctions of the Code:

Section 2984 is as follows: "A judgment or decree shall not bind the equitable interest of the debtor in real estate or other property, unless within sixty days from its rendition a memorandum of the judgment or decree, stating the amount and date thereof, with the names of the parties, is registered in the register's office of the county where the real estate is situated."

In relation to the jurisdiction of chancery courts, section 4282 of the Code is as follows: "They have exclusive jurisdiction to aid a creditor by judgment or decree, to subject the property of defendant which cannot be reached by execution, to the satisfaction of the judgment or decree, under the provisions of this Code."

It is conceded that complainant had a duly certified copy of his judgment registered in the county where the real estate is situated, and within the time required by the Code, but he has failed to have a. duly certified copy of his execution filed in the record with the return thereon, showing that the defendants had no property which could be reached by execution. In the case of *McNairy* v. *Eastland,* 10 Yer., 309, the

·court held a creditor by judgment may, by bill in chancery, subject the equitable interest of the judgment debtor in real estate without first having issued an ·execution thereon. The writer of this opinion is not aware that this case has been overruled, but on the ·contrary it has been referred to with approbation in subsequent cases: *Green* v. *Starnes,* 1 Heis., 588; 7 Heis., 307.

But even if it was necessary that a judgment creditor should issue his execution and have a return thereon of *nulla bona* before he could file a bill to subject the equitable interest of a judgment debtor to the satisfaction of his judgment, still in this case complainant expressly alleges that he did have an execution issued upon his judgment in the supreme court, and the same was returned *nulla bona* on the 3d of July, 1876. The answer says, "they suppose it is true the *fi. fa.* issued from said judgment at the time stated, and that the officer made the return thereon in the manner and at the date stated in the bill," clearly admitting the issuance and return of the execution, and waived the necessity of its being filed in the record.

The more serious and difficult question urged by ·defendant's counsel is, that the proper and necessary parties were not before the court—that the pleadings and proof did not fix and ascertain the interest of said defendants in the real estate, and to sell the equitable interests of the defendants with this uncertainty, would deter bidders and cause a ruinous sacrifice of the property of defendants, and be productive of a multiplicity of suits.

Story, in his Equity Pleadings, sec. 75, says: "If the proper parties are not made, the defendant may either demur to the bill or take the objection by way of plea or answer; or when the cause comes on to a hearing, he may object that the proper parties are wanting; or the court . itself may state the objection,. and refuse to proceed to make a decree; or if a decree is made it may for this very defect, be reversed on a hearing, or on an appeal."

Daniel, in his Chancery Practice and Pleading, p. 181, says: "It is the constant aim of a court of equity to do complainants. justice by deciding upon and settling the rights of all parties interested in the subject of the suit, so as to make the performance of the order of the court perfectly safe to those who are compelled to obey it, and to prevent future litigation."

Judge Story, in his work on Pleadings, sec. 72, says: "It is a general rule in equity that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all. By this means the court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity for a multiplicity of suits, and to make it perfectly certain that *no injustice* is done either to the parties before it, or to others, who are interested in the subject-matter, by a decree which might otherwise be grounded upon a partial view of the real merits."

Now let us apply the principles· of law laid down in these standard works to the case before us. The bill of complainant seeks to subject the equitable interest of these defendants in the entire tract of 205½ acres, and the chancellor so decrees, without any proof to show or reference to ascertain what that interest is. The bill discloses that 55 acres of this land had, in 1874, been conveyed to West H. Humphreys, as trustee, to secure a debt to B. R. Johnson of $2,762.50, which, with interest to this date, amounts to over ·$4,000, and not one word of proof, nor does the bill or answer show whether any of it has been paid. The bill and answer discloses the fact that one Granbury has a lien upon said land or some portion of it, for the payment of a debt of over $2,800, about which litigation is now pending in the courts, and not one word of proof whether that litigation is ended, and ·said debt paid or any part thereof, or whether the lien is upon the entire tract of 205½ acres, or only ·a portion, and if so, what portion of said land.

The bill charges that J. P. Helms has a lien upon said land which is subsequent to complainant's lien, and there is not one word of proof to show whether the lien of Helms is prior or subsequent to the lien, ·or what is the amount involved in the suit for which he is surety on the appeal, having taken said mortgage upon the land to secure him as such surety. The decree directs the clerk and master to sell all the interest of defendants, legal and equitable, in said 205½ acres of land, and unless otherwise directed by J. E. ·Saunders and N. P. Saunders, he will sell their in-

terest separately—first selling the interest of N. P.
Saunders—and yet there is no proof in the record
which shows what interest Mrs. A. V. Brown has in
the land, or what is the interest of Miss N. P. Saun-
ders.    What prudent man, however anxious he might
be to invest his means in real estate, would make a
bid at a sale where there was so much uncertainty
as to the interest which he would obtain by his pur-
chase, and where he would necessarily be involved in
a multiplicty of suits.    Suppose the party who wished
to purchase employed the most eminent counsel, could
he give him any opinion upon which he could rely?
Could he tell him whether the debt of B. R. Johnson
had been paid, the lien of Granbury removed, the
lien of Helms prior to the lien of complainant?  Could
the clerk and master, when he exposed the "legal
and equitable interest" of these defendants for sale,
give any reliable information upon these matters?  None
whatever.    The inevitable consequence would be that
the entire interest of all these defendants in that tract
of 205½ acres of land, which is assessed for taxation
at $25,000, as the affidavits for the appointment of
a receiver show, would be ruinously sacrificed.    By
pursuing the course laid down by Judge Story and
Mr. Daniel, and bring all of these parties before the
court, and ascertain and fix by a decree of this court
whether the debt of B. R. Johnson has been paid, or
any part of it, and what part of said tract is em-
braced in the 55 acres conveyed to save said debt—
whether the lien of Granbury has been removed, and
whether this lien is upon the whole of said tract or

only a part thereof—and whether the lien of Helms is prior or subsequent to the lien of complainant. "By this means," in the language of Judge Story, "the court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity for a multiplicity of suits, and to make it perfectly certain, that no injustice is done, either to the parties before it, or to others who are interested in the subject-matter."

If the object of the complainant is to invoke the aid of a court of equity to collect his debt, this would be the most certain means to accomplish that object. If it be to sacrifice the property of defendants, a court of equity will not aid him to do it.

It may be that a large portion of the debt of B. R. Johnson has been paid, that the result of the litigation with Granbury has removed his lien, and the liability of Helms as surety has been removed, and the sale of only a small portion of this valuable tract of land would be sufficient to pay complainant's debt and all interest thereon, and still leave defendants a home. By affirming the decree of the chancellor, all of their interest, legal and equitable, would be sacrificed, sold free from redemption, and the purchaser would be either the complainant or some speculative adventurer, who would turn them out of possession and take his chances in the litigation which would follow, whether the small investment he made would be lost or win a fine estate. I do not think that courts of chancery ought to lend its aid to any such proceedings, and while I cannot find any case directly adjudicating the

question, I am greatly strengthened in the conclusion which I have reached by an able opinion of this court, delivered by Judge McFarland, in the case of *Fulghum* v. *Cotton*, 6 Lea, 574. He says: "In this State decrees of foreclosure have not been adopted, but decrees of sale; it may be safely said that the practice has been generally to make *prior incumbrancers parties*, and SELL, not the mere equity of the debtor, *but the property itself*, so as to vest the purchaser with an absolute title, and apply the proceeds according to the priorities of the several encumbrancers. This course is to be commended, in that it avoids multiplicity of suits, *is a direct* mode of accomplishing the proper result, and does injustice to no one." The Supreme Court in this case reversed the decree of the chancellor, who held, "the only relief a judgment creditor is entitled to, is a decree to redeem the mortgage by paying off the debts, and then having a decree for sale in satisfaction of his debt judgment and the mortgage debt, or a decree for the sale of the debtor's interest in the property, subject to the mortgage lien; that he is not entitled to *a sale* of the property itself, in order to reach the surplus, unless the mortgagee consents."

Judge McFarland says: "It is argued that to hold contrary to the chancellor's conclusions, will be arbitrarily to override a well-settled line of decisions and disregard well-settled law. The authorities, however, have never been adopted in this State, and it is more than probable that an attempt to revive and apply them now would be a great surprise to the profession." He says: "The practice in this State has always

45—VOL. 10.

been, as said in *Cloud* v. *Hamilton,* to sell the prop-
erty."

No principle of law is better settled than the ju-
risdiction of a court of equity to aid an execution
creditor in removing embarrassments in the way of a
sale, so as to prevent a sacrifice of the property, and
ascertain the precise interest sold: See *Parrish* v. *Saun-
ders,* 3 Hum., 431; *Tony* v. *Page,* 10 Hum., 541; *Has-
kins* v. *Everett,* 4 Sneed, 531.

"Wherever there is uncertainty as to what that
interest is, it would operate prejudicially to the judg-
ment creditor by leaving him in doubt as to . what
his bid should be. It would also work injuriously
to the judgment debtor, in the eye of the wal, by
deterring bidders." See *Kerr* v. *Kerr,* 3 Lea, 228.

In view of these authorities, as well as the inev-
itable sacrifice of the property and ruin of the defend-
ants, without any benefit to the complainant, we think
the decree of the chancellor should be reversed, and
the cause remanded to the chancery court of Davidson,
with leave to the complainant to amend his bill by
making all who have liens upon the land sought to be
sold parties, and ascertain by proper references the
priority of said liens, the amount of the debts secured
by the same, whether said liens exist upon the whole
or a portion of said tract of land, the precise interest
of defendants in the same, and for a sale of said lands,
or so much thereof as may be necessary to pay said
debts, according to their priorities, and the judgment
of complainant and all interests and costs.